1  Rosemary M. Rivas (State Bar No. 209147)
   Email: rrivas@zlk.com
2  **LEVI & KORSINSKY, LLP**
   44 Montgomery Street, Suite 650
3  San Francisco, California 94104
   Telephone: (415) 291-2420
4  Facsimile: (415) 484-1294

5  *Counsel for Plaintiff Ryan Fax*

8             **UNITED STATES DISTRICT COURT**

9            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RYAN FOX, an individual, | Case No. 5:17-cv-06438 |
| Plaintiff, | **COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934** |
| v. | |
| IXYS CORPORATION, NATHAN ZOMMER, UZI SASSON, SAMUEL KORY, KENNETH D. WONG, JAMES M. THORBURN, S. JOON LEE, DONALD L. FEUCHT, and TIMOTHY A. RICHARDSON, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, Ryan Fox, by his undersigned attorneys, alleges upon investigation of counsel and information and belief, except for his own acts, which are alleged on knowledge, as follows:

**NATURE OF THE ACTION**

1.  Plaintiff brings this action against IXYS Corporation ("IXYS" or the "Company") and the Company's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of IXYS.  Specifically, Defendants solicit the stockholder approval in connection with the sale of the Company through a registration statement that omits material facts necessary to make the statements therein not false or misleading.  Stockholders need this material information to decide whether to vote in favor of the merger.

2.  On August 28, 2017, the Company announced that it had entered into a definitive agreement (the "Merger Agreement") with Littelfuse, Inc. ("Parent") and Iron Merger Co., Inc., ("Merger Sub," and together with Parent, "Littelfuse"), pursuant to which each IXYS stockholder will be entitled to elect to receive, per IXYS share, either $23.00 in cash or 0.1265 of a share of Littelfuse common stock, subject to proration (the "Merger Consideration") in a transaction valued at approximately $750 million (the "Proposed Transaction").

3.  In connection with the Proposed Transaction, on October 26, 2017, the Company filed a Form S-4 Registration Statement (the "Registration Statement") with the Securities and Exchange Commission ("SEC").  The Registration Statement is materially deficient and misleading because, inter alia, it fails to disclose material information about (i) the background of the transaction; (ii) the valuation analyses prepared by IXYS' financial advisor in connection with the rendering of its fairness opinion; and (iii) potential conflicts of interest faced by IXYS' management and directors.  Without all material information, IXYS stockholders cannot make an informed decision regarding whether to vote for or against the Proposed Transaction.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as stockholders need such information in order to make a fully-informed decision in connection with the stockholder vote on the Proposed Transaction.

4.     For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws. Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

**JURISDICTION AND VENUE**

5.     The claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act, 15 U.S.C. § 78aa. The Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     The Court has personal jurisdiction over each Defendant because each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) IXYS maintains its principal place of business in this District and each Individual Defendant, and Company officers or directors, either reside in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**PARTIES**

8.     Plaintiff is, and has been at all relevant times, the owner of shares of IXYS common stock.

9.     Defendant Nathan Zommer ("Zommer") is the Company's founder and has served as a director of IXYS since its inception in 1983. Currently, Zommer serves as Chairman of the Board

1  and Co-Chief Executive Officer.

2        10.     Defendant Uzi Sasson ("Sasson") has served as the Company's Co-Chief Executive Officer since August 2016, the Company's President since December 2009, and the Company's Chief Financial Officer and Secretary since November 2004. Sasson has served as a director of IXYS since June 2015, after previously serving as a director from August to November 2004.

      11.     Defendant Kenneth D. Wong ("Wong") has served as a director of IXYS since 2011, after previously serving as a director from 2004 to 2007.

      12.     Defendant Samuel Kory ("Kory") has served as a director of the Company since 1999.

      13.     Defendant James M. Thorburn ("Thorburn") has served as a director of IXYS since 2007.

      14.     Defendant S. Joon Lee ("Lee") has served as a director of IXYS since 2000.

      15.     Defendant Donald L. Feucht ("Feucht") has served as a director of IXYS since 2000.

      16.     Defendant Timothy A. Richardson ("Richardson") has served as a director of IXYS since 2007.

      17.     Defendants Zommer, Sasson, Kory, Wong, Thorburn, Lee, Feucht, and Richardson are collectively referred to herein as "Individual Defendants" and/or the "Board."

      18.     Defendant IXYS is a corporation organized and existing under the laws of the State of Delaware. The Company maintains its principal executive offices at 1590 Buckeye Drive, Milpitas, California 95035. IXYS common stock is traded on the NASDAQ Global Select Market under the symbol "IXYS."

      19.     The Individual Defendants and IXYS are referred to collectively herein as "Defendants."

## OTHER RELEVANT ENTITIES

      20.     Parent is a Delaware corporation and the world leader in circuit protection with growing global platforms in power control and sensing. Parent is a party to the Merger Agreement.

      21.     Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

**FURTHER SUBSTANTIVE ALLEGATIONS**

**COMPANY BACKGROUND**

22. IXYS develops and markets technology-driven products to improve energy conversion efficiency, generate clean energy, advance automation and provide solutions for the transportation, medical, and telecommunication industries. Since its founding, IXYS has developed power semiconductors, solid state relays, high voltage integrated circuits, and microcontrollers that are used in conserving energy and in reducing the world's dependence on fossil fuels. The Company is headquartered in Milpitas, California.

**THE SALES PROCESS**

23. Prior to February 2017, IXYS received a number inquiries from third parties expressing interest in a potential strategic combination. Although these inquiries were of a preliminary nature and did not lead to a bona fide proposal with a purchase price or were otherwise sufficiently compelling for the IXYS Board, details regarding the nature and extent of these proposals are not provided in the Registration Statement.

24. On February 21, 2017, Eyal Altman ("Altman"), Vice President and General Manager—Automotive Electronics Business at Littelfuse reached out to Defendant Sasson regarding Littelfuse's interest in exploring a strategic combination between Littelfuse and IXYS. To further facilitate these discussions, Littelfuse and IXYS entered into a confidentiality agreement on March 17, 2017.

25. Following the execution of the confidentiality agreement, Defendant Zommer and Defendant Sasson met with Altman, David Heinzmann, President and Chief Executive Officer of Littelfuse, and Gordon Hunter, Executive Chairman of the Littelfuse board of directors, to discuss the respective businesses of Littelfuse and IXYS and a potential combination between Littelfuse and IXYS. This meeting, which occurred on March 20, 2017, fostered further communications between the parties and resulted in the parties amending the confidentiality agreement on April 10, 2017, to include a standstill provision.

26. On May 5, 2017, Dave Coughlan ("Coughlan"), Vice President of Business Development at Littelfuse, contacted Defendant Sasson to notify him that Littelfuse was considering

a proposal to acquire all outstanding shares of IXYS for a price of $21.35 per share. One week later, on May 12, 2017, Coughlan again contacted Sasson and informed him that Littelfuse was considering a revised proposal to acquire all outstanding shares of IXYS for a price of $21.75 per share (the "May 12 Proposal").

27. Following the receipt of the May 12 Proposal the parties continued to engage in discussions regarding their respective businesses, and on June 5, 2017, Defendant Sasson reached out to Needham & Company, LLC ("Needham & Company") to explore whether there was interest from third parties in an acquisition of IXYS.

28. Later that month, during a June 15, 2017 IXYS board meeting, the Board reviewed the May 12 Proposal and discussed the potential strategic alternatives available to IXYS. During this meeting, the Board determined to engage Needham & Company as financial advisor to IXYS. This relationship was later formalized on June 23, 2017, when IXYS entered into an engagement letter with Needham & Company for the provision of financial advisory services in connection with a potential sale of IXYS.

29. While discussions between Littelfuse and IXYS continued throughout the month of June, Company A, a United States based publicly traded semiconductor company, reached out to Defendant Zommer and Defendant Sasson to notify them that Company A was considering a proposal for the acquisition of all of the outstanding shares of IXYS.

30. On June 28, 2017, Littelfuse presented to the Board a non-binding proposal for an acquisition of all of the outstanding shares of IXYS for a price of $22.35 per share, including a mix of stock and cash consideration. Following the receipt of this proposal, the Board instructed IXYS management and Needham & Company to continue non-exclusive discussions with Littelfuse and to conduct outreach to other potential acquirers.

31. Needham & Company's efforts quickly bore fruit when, on July 5 2017, a representative of Company B, a United States based publicly traded semiconductor company, indicated that it was considering a proposal for a strategic transaction with IXYS. On July 13, 2017, IXYS and Company B entered into a confidentiality agreement on July 13, 2017, which included a standstill provision. In addition to Company B, Needham & Company reached out to or were

contacted by 12 other parties regarding their possible interest in an acquisition of IXYS. These outreach efforts, which commenced on June 28 and ended on July 29, resulted in IXYS entering into confidentiality agreements with three parties, namely Littelfuse, Company A, and Company B, all of which contained standstill provisions which terminated in accordance with their terms upon IXYS' entry into the merger agreement.

32. On July 7, 2017, Company A informed Defendant Sasson that it was considering a proposal for the acquisition of all of the outstanding shares of IXYS for a price in a preliminary range of $23.00–25.00 per share. That same day, Defendant Sasson spoke to Coughlan regarding the status of the potential transaction with Littelfuse and informed Littelfuse's Vice President that a purchase price of $22.35 per share was not likely to be supported by the IXYS' Board and that IXYS had been approached by another party which had indicated a purchase price of around $25.00 per share.

33. IXYS and Company A entered into a confidentiality agreement on July 19, 2017, which included a standstill provision.

34. With three interested parties competing for IXYS, the Board directed Needham & Company to seek final written proposals from any interested acquirers, by July 26, 2017.

35. On July 25, 2017, Littelfuse submitted a written non-binding proposal for the acquisition of all of the outstanding shares of IXYS for a price of $23.00 per share, including a mix of stock and cash consideration that provided for 45% of IXYS shares to be converted into the stock consideration. Littelfuse's proposal was contingent on the parties entering into an exclusivity agreement.

36. The following day, Company A submitted a written non-binding proposal for the acquisition of all of the outstanding shares of IXYS for a price in the range of $20.00–21.00 per share, including a mix of stock and cash consideration. Company A's proposal was also contingent on the parties entering into an exclusivity agreement

37. Company B elected not to submit a proposal for the acquisition of IXYS, and on July 26, 2017, the company communicated to a representative of Needham & Company that it did not believe there was a good strategic fit with IXYS.

38. That same day, the Board met to review the status of discussions with the various

interested entities. At this meeting the Board reviewed discussions with potential acquirers, including the revised proposal received from Littelfuse on July 25, 2017, and the initial proposal received from Company A on July 26, 2017, and updated preliminary financial analyses with respect to IXYS and potential strategic combinations. Following this discussion, the Board authorized IXYS management to enter into a 21-day exclusivity agreement with Littelfuse and to commence negotiations with Littelfuse on the basis of a proposed purchase price of $23.00 per share. Three days later, IXYS entered into an exclusivity agreement with Littelfuse, and, over the next several weeks, IXYS and Littelfuse proceeded to conduct due diligence and negotiate the various terms of the Merger Agreement.

39. On August 25, 2017, the parties reached an agreement regarding the terms of the Merger Agreement. That night, the Board met to vote on the proposed acquisition and, following the presentation of Needham & Company's fairness opinion, the Board proceeded to approve the Merger Agreement and the Transaction. That same night, the Company and Littelfuse finalized and executed the Merger Agreement and related documents, and on August 28, 2017, the parties issued a joint press release announcing the merger.

**THE MERGER ANNOUNCEMENT**

40. In a press release dated August 28, 2017, IXYS announced that it had entered into a Merger Agreement with Littelfuse pursuant to which each IXYS stockholder will be entitled to elect to receive, per IXYS share, either $23.00 in cash or 0.1265 of a share of Littelfuse common stock.

41. The press release states in pertinent part:

**CHICAGO, IL AND MILPITAS, CA, August 28, 2017** — Littelfuse, Inc. (NASDAQ:LFUS) and IXYS Corporation (NASDAQ:IXYS) today announced that they have entered into a definitive agreement under which Littelfuse will acquire all of the outstanding shares of IXYS in a cash and stock transaction. The transaction represents an equity value of approximately $750 million and enterprise value of $655 million. Under the terms of the agreement, each IXYS stockholder will be entitled to elect to receive, per IXYS share, either $23.00 in cash or 0.1265 of a share of Littelfuse common stock, subject to proration. In total, 50% of IXYS stock will be converted into the cash election option and 50% into the stock election option.

IXYS is a global pioneer in the power semiconductor and integrated circuit markets with a focus on medium to high voltage power control semiconductors across the industrial, communications, consumer and medical markets. IXYS has a broad customer base, serving more than 3,500 customers through its direct salesforce and global distribution partners. IXYS reported revenues of $322 million in its fiscal 2017 with an adjusted EBITDA margin of approximately 13.5%.

The combined company is expected to have annual revenues of approximately $1.5 billion, with the following compelling strategic and financial benefits:

- Broader technology platform and capability to expand growth into industrial and electronics markets

- Increased long-term penetration of power control portfolio in automotive markets, expanding global content per vehicle

- Heightened engineering expertise and intellectual property around high voltage and silicon carbide semiconductor technologies

- Increased presence in the semiconductor industry, adding to our scale and volume

- Strong relationships and complementary overlap in major global electronics distribution partnerships enabling cross-selling

- Immediately accretive to adjusted EPS and free cash flow post transaction close

- Expect to generate more than $30 million in annualized cost savings; additional future value created from revenue synergies and tax rate reduction

"As the largest acquisition in our 90-year history, this is an exciting milestone for Littelfuse," said Dave Heinzmann, President and Chief Executive Officer, Littelfuse. "IXYS' extensive power semiconductor portfolio and technology expertise fit squarely within our strategy to accelerate our growth within power control and industrial OEM markets. The combination of Littelfuse and IXYS unites complementary capabilities, cultures and relationships."

"IXYS will operate as the cornerstone of the combined companies' power semiconductor business," said Dr. Nathan Zommer, Chairman and Chief Executive Officer of IXYS. "Both Littelfuse and IXYS have long histories of innovation and customer-focused product development, and together, we will embrace the entrepreneurial spirit that has contributed to IXYS' success in the power semiconductor and integrated circuits market."

"The combination of IXYS and Littelfuse creates a stronger player in the power semiconductor industry, with the ability to leverage our collective resources and portfolio to create increased value for our customers," added Uzi Sasson, President and Chief Executive Officer of IXYS. "We believe that being a part of a world-class organization like Littelfuse will provide a bright future for IXYS and the talented people at our respective companies."

**Transaction Highlights**

The transaction is expected to be immediately accretive to Littelfuse's adjusted earnings per share and free cash flow in the first full year post transaction close, excluding any acquisition and integration related costs. Littelfuse expects to achieve more than $30 million of annualized cost savings within the first two years after closing the transaction. Longer term, the combination is also expected to create significant revenue synergy opportunities given the companies' complementary offerings, as well as benefits from future tax rate reduction.

In conjunction with the definitive agreement, Dr. Nathan Zommer, IXYS founder and currently the company's largest stockholder with approximately 21% ownership, has entered into a voting and support agreement. Subject to the agreement's terms and conditions, he has agreed to vote his shares in favor of the transaction. After close of the transaction, Dr. Zommer is expected to join Littelfuse's Board of Directors, subject to the board's governance and approval process. His technical skills and extensive experience across the semiconductor industry will benefit the combined company with its integration efforts, innovation roadmap and revenue expansion.

The transaction is expected to close in the first calendar quarter of 2018 and is subject to the satisfaction of customary closing conditions, including regulatory approvals and approval by IXYS stockholders. Littelfuse expects to finance the cash portion of the transaction consideration through a combination of existing cash and additional debt.

Morgan Stanley & Co. LLC is serving as financial advisor and Wachtell, Lipton, Rosen & Katz is serving as legal counsel to Littelfuse. Needham & Company, LLC is serving as financial advisor and Latham & Watkins LLP is serving as legal counsel to IXYS.

**Conference Call and Webcast Information**

Littelfuse will hold a conference call for investors on Monday, August 28, 2017 at 8am Central/9am Eastern to discuss this announcement. The call will be broadcast live and can be accessed at www.Littelfuse.com. The accompanying presentation and archived webcast will be available on the Events & Presentations page of the Investor Relations section of the company's website.

About Littelfuse

Founded in 1927, Littelfuse is the world leader in circuit protection with growing global platforms in power control and sensing. The company serves customers in the electronics, automotive and industrial markets with technologies including fuses, semiconductors, polymers, ceramics, relays and sensors. Littelfuse has over 10,000 employees in more than 40 locations throughout the Americas, Europe and Asia. For more information, please visit the Littelfuse website: Littelfuse.com.

About IXYS

Since its founding in Silicon Valley in 1983, IXYS has been a worldwide pioneer in the development of power semiconductors, solid state relays, high voltage integrated circuits, and microcontrollers. With an end customer base of over 3,500 across the industrial, communications, consumer, medical and transportation industries, IXYS is a worldwide recognized provider of advanced semiconductors. Additional information may be obtained by visiting the IXYS website at IXYS.com.

**THE REGISTRATION STATEMENT IS MATERIALLY MISLEADING**

42.     On October 26, 2017, IXYS filed a Registration Statement with the SEC. As alleged below and elsewhere herein, the Registration Statement contains material misrepresentations and omissions of fact that must be cured to allow IXYS' stockholders to render an informed decision with respect to the Proposed Transaction.

43. As discussed below, the Registration Statements omits material information regarding: (i) the background of the transaction; (ii) the valuation analyses prepared by IXYS' financial advisor in connection with the rendering of its fairness opinion; and (iii) potential conflicts of interest faced by IXYS' management and the Board.

44. This material information directly impacts the Company's expected future value as a standalone entity, and its omission renders the statements made materially misleading and, if disclosed, would significantly alter the total mix of information available to IXYS' stockholders. Accordingly, IXYS stockholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning the Background of the Transaction*

45. With regard to the omission of material information relating to the sale process leading up to the Proposed Transaction, the Registration Statement provides that prior to February 2017, IXYS received inquiries from third parties expressing interest in a potential strategic combination. These inquiries were described as being "of a preliminary nature and did not lead to a bona fide proposal with a purchase price or that was otherwise sufficiently compelling for the IXYS board of directors." The Registration Statement conspicuously omits any further information regarding the nature of these inquiries, nor does the Registration Statement disclose whether the Company entered into nondisclosure agreements with these entities to facilitate the discussion of various potential strategic opportunities.

46. Accordingly, without further information regarding the nature of these inquiries and whether any of the entities entered into confidentiality agreements with IXYS, the Company's stockholders are being misled into assuming that these other industry participants, which were actively interested in acquiring the Company, could make an offer to acquire the Company if they so choose—when they may be contractually precluded from doing so. Additionally, without further information, stockholders are being misled as to their understanding as to what price offers were considered not to be "sufficiently compelling" by the Board.

47. The omission of this information renders certain portions of the Registration Statement false and/or materially misleading in contravention of the Exchange Act including, inter alia, the

following sections of the Recommendation Statement: (i) "Background of the Merger."

*Material Omissions Concerning Needham & Company's Financial Analyses*

48. The Registration Statement describes Needham & Company's fairness opinion and the various valuation analyses it performed in support of its opinions. However, the description of Needham & Company's fairness opinion and the underlying analyses omits key inputs and assumptions underlying these analyses. Without this information, as described below, IXYS public stockholders are being misled as to what weight, if any, to place on Needham & Company's fairness opinions in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to IXYS stockholders.

49. Specifically, with regard to *IXYS Selected Companies Analysis*, the Registration Statement omits the individual multiples for each of the selected public companies analyzed by Needham & Company, as well as the financial performance metrics for each selected company.

50. Similarly, with regard to *Selected Transactions Analysis*, the Registration Statement omits the individual multiples for each of the selected transactions analyzed by Needham & Company, as well as any benchmarking analyses Needham & Company performed for IXYS in relation to the target companies.

51. Furthermore, with respect to the *Premiums Paid Analysis*, the Registration Statement notes that Needham & Company reviewed publicly available financial information for 14 merger and acquisition transactions, however, the Registration Statement fails to identify these transactions.

52. Moreover, in connection with Needham & Company's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the specific inputs and assumptions underlying the discount rate range of 11.5% to 13.5% selected by Needham in its analysis; (ii) the Company's projected 2020 *adjusted* EBITDA; (iii) Needham's basis for selecting terminal multiples of 7.0x to 10.0x to apply to IXYS' 2020 adjusted EBITDA; and (iv) the perpetuity growth rate range implied by Needham's analysis.

53. Finally, with respect to Needham's *Present Value of Illustrative Future Stock Prices Analysis*, the Registration Statement fails to disclose: (i) Needham's basis for selecting multiples of

7.0x to 10.0x to apply to IXYS's projected 2018, 2019, and 2020 adjusted EBITDA; (ii) IXYS' projected cash and debt at the end of the respective projected fiscal years 2018, 2019, and 2020; and (iii) the specific inputs and assumptions underlying the discount rate range of 13.1% to 15.1% selected by Needham in its analysis.

54. When a bankers' endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses are crucial to a fair presentation of the material facts. Furthermore, the disclosure of projected financial information provides stockholders with the best basis to project the future financial performance of a company and allows stockholders to understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. This information is therefore material, and must be disclosed if IXYS stockholders are to make a fully informed decision. The omission of this information renders the statements made concerning the financial advisors' analyses and opinions materially misleading.

55. Without such undisclosed information, IXYS stockholders cannot evaluate for themselves whether the financial analyses performed by Needham & Company were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can evaluate the extent to which Needham & Company's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

56. The omission of this information renders certain portions of the Proxy Statement materially misleading, including, inter alia, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "IXYS' Reasons for the Merger; Recommendation of IXYS Board of Directors"; and (iii) "Opinion of IXYS' Financial Advisor."

*Material Omissions Concerning Insider's Potential Conflicts of Interest*

57. Finally, the Registration Statement omits material information concerning the potential conflicts of interest faced by IXYS management and the Board.

58. As detailed in the Registration Statement, Defendant Zommer and Defendant Sasson

entered into amended employment agreements with IXYS on August 25, 2017. These agreements, which were executed the same day that IXYS entered into the Merger Agreement, provide for lucrative salaries, bonuses, and change in control payments upon the termination of the officers. However, details regarding the timing and substance of the negotiations pertaining to these amended employment agreements, including who first proposed the amended agreements, when they were proposed, and who participated in those discussions, are glaringly absent from the Registration Statement. This information is necessary so that IXYS stockholders can determine whether either Defendant Zommer or Defendant Sasson, or both of whom played an outsized role in negotiating and facilitating the Proposed Transaction, had personal interests that prevented them from acting solely in the best interests of the Company's stockholders.

59. Additionally, the Registration Statement notes that Defendant Zommer will join the Littelfuse board of directors following the completion of the merger. However, the Registration Statement fails to disclose the timing and nature of communications regarding future employment and/or directorship of IXYS officers and directors, including who participated in all such communications. Given the outsized role that Defendant Zommer played during the negotiation of the Merger Agreement, this information is necessary for stockholders to understand potential conflicts, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

60. The omission of this information renders certain portions of the Registration Statement false and/or materially misleading in contravention of the Exchange Act including, inter alia, the following sections of the Registration Statement: (i) "Background of the Merger"; (ii) "IXYS' Reasons for the Merger; Recommendation of IXYS Board of Directors"; and (iii) "Interests of IXYS' Directors and Executive Officers in the Merger."

61. Based on the foregoing, the Registration Statement violates Section 14(a) of the Exchange Act and applicable SEC regulations by materially misleading IXYS stockholders. IXYS public shareholders lack critical information necessary to evaluate the Proposed Transaction. Moreover, without the key financial information and related disclosures, IXYS public stockholders cannot gauge the accuracy and reliability of the financial analyses performed by Needham &

Company, and whether they can reasonably rely on their respective fairness opinions.

62. Accordingly, Plaintiff seeks, among other things, the following relief: (i) enjoinment of the Proposed Transaction; or (ii) rescission of the Proposed Transaction in the event that it is consummated and to recover damages resulting from Defendants' misconduct.

## CLAIMS FOR RELIEF

### COUNT I
### Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

63. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64. As detailed herein, Defendants disseminated the materially incomplete and misleading Registration Statement specified above, which contained statements and omissions which, at the time and in the light of the circumstances under which they were made, were false and misleading with respect to material facts and which omitted to state material facts necessary to make the statements therein not misleading, in violation of Section 14(a) of the Exchange Act and SEC Rules promulgated thereunder, including SEC Rule 14a-9.

65. By the use of the mails and by means and instrumentalities of interstate commerce and the facility of a national securities exchange, Defendants solicited and permitted the use of their names to solicit proxies or consents or authorizations in respect of the common stock of IXYS.

66. By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by Defendants. The Registration Statement misrepresented and omitted material facts, including material information about the sale process for the Company, the consideration offered in the Proposed Transaction, and the actual intrinsic value of the Company's assets. Defendants were at least negligent in filing and disseminating the Registration Statement with these materially incomplete and misleading statements and omissions. Defendants have also failed to correct the Registration Statement and the failure to update and correct false statements is also a violation of Section 14 of the Exchange Act and SEC Rules promulgated thereunder.

67. The omissions and false and misleading statements in the Registration Statement are

1 material in that a reasonable stockholder would consider them important in deciding whether to vote in favor of and tender their shares in the Proposed Transaction. A reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Registration Statement and in other information reasonably available to stockholders.

68. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from immediate and irreparable injury, which Defendants' actions threaten to inflict.

## COUNT II
**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

69. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

70. The Individual Defendants acted as controlling persons of IXYS within the meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of their positions as officers and directors of IXYS and their participation in and awareness of the Company's business and operations and their intimate knowledge of the materially false statements and omissions contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

71. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be false and misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

72. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. Among other things, the Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, they were directly involved in the making of that document.

73. In addition, as the Registration Statement sets forth at length, and as described herein,

the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

74. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A) declaring that the Registration Statement is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(B) preliminarily and permanently, enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

(C) to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

(D) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(E) granting Plaintiff such further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: November 3, 2017

**LEVI & KORSINSKY, LLP**

By: /s/ *Rosemary M. Rivas*
Rosemary M. Rivas
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

*Counsel for Plaintiff Ryan Fax*